UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD BEELBY,

                    Petitioner,                    Case Number 2:12-CV-13659
                                                  Honorable Denise Page Hood

v.

TOM BIRKETT,

                    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCCED ON APPEAL IN FORMA PAUPERIS**

This matter is before the Court on Petitioner Gerald Beelby's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Oakland Circuit Court of one count of arson of a dwelling house. Mich. Comp. Laws § 750.72. As a result of his conviction, Petitioner was sentenced as a fourth-time habitual felony offender to 12-to-40 years in prison.

The petition raises twelve claims: (1) the prosecutor committed misconduct; (2) critical exculpatory evidence was destroyed by the state; (3) trial counsel was ineffective for failing to hire an expert witness; (4) the prosecutor allowed false testimony to stand; (5) the prosecutor charged Petitioner under he wrong statute because the structure did not constitute a dwelling; (6) pre-arrest delay prejudiced Petitioner ability to present his defense; (7) the prosecutor suppressed photographs of the scene; (8) defense counsel was ineffective for failing to properly investigate the case; (9) Petitioner was erroneously prevented from presenting evidence that a prosecution witness had failed to register as a sex offender; (10) there was insufficient evidence presented at trial; (11) appellate counsel

was ineffective for failing to raise meritorious claims during Petitioner's direct appeal; and (12) Petitioner has demonstrated good cause and prejudice to excuse his procedural default.

The Court finds that Petitioner's claims are without merit or barred by his procedural default of failing to present claims to the state courts during his direct appeal. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal in forma pauperis.

## I. Facts and Procedural History

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's conviction arises from an incident that occurred on June 18, 2005, at a house owned by Robert Redmond [on] Oakland Street in Holly. Delores Hernandez rented the upstairs unit of the house and defendant later moved in with her. Defendant owned a yellow "golf ball looking thing" with a green fuse that he described as "a quarter stick of dynamite." Neighbors often heard defendant and Hernandez argue.
>
> On the night of June 17, 2005, defendant and Hernandez went to a bar with Hernandez's brother and his ex-wife. Defendant and Hernandez argued and defendant left, saying that he was going to walk home. Hernandez later left the bar and spent the night at a friend's house.
>
> Sometime between midnight and 1:00 a.m., defendant showed up at the home of Joseph Fultz. He was upset and explained that he had an argument with Hernandez. Half an hour later, Fultz walked defendant home. Defendant, who was still upset, said "he was going to go home, throw shit out the window and burn his house." Fultz tried to dissuade him. Once at the house, Fultz stayed to talk with defendant, "trying to calm him down and tell him it's probably best to just leave things alone." After 20 minutes, Fultz left. Defendant, who had run out of cigarettes, accompanied Fultz home and got some from him. Defendant then left.
>
> Joseph and Sarah Miller lived next door to Hernandez and defendant.

Sometime between 5:30 and 6:00 a.m., they heard loud noises from next door and Sarah Miller saw defendant hurling boxes out the upstairs front door; other items were already on the ground, including a toilet, a television, a fan, a cabinet, and a bench. At approximately 7:00 a.m., defendant came to the Millers' door, said his house was on fire, and suggested that they might want to evacuate. Sarah Miller went outside and saw that defendant's house "was completely engulfed in flames." Steven Sipes, who lived across the street, was awakened by an explosion and looked out to also see flames shooting out the upstairs window. He also noticed items lying about the yard.

A responding police officer noticed various items in the front yard, including a bicycle, boxes, clothing, and "household items." Defendant emerged from his grandfather's house across the street and approached his house. When the officer went to speak with defendant, he dropped to the ground, curled up in the fetal position, removed his socks, and "was crying about his house being on fire and saving his son's bike."

One firefighter noted that the fire seemed to be unusually intense. Investigators were called in to determine the cause and origin of the fire. An electrical engineer ruled out the electrical and natural gas systems as causes. He found no defects in any appliances that could account for the fire. James Lehtola, an arson investigator, determined from burn patterns on the floor of the bedroom that a flammable liquid had been poured on the bedroom floor and ignited with an open flame. An arson investigator hired by Redmond's insurer, Robert Puddy, also noticed distinctive burn patterns on the floor and determined that the fire was caused by the ignition of vapors from an accelerant poured primarily on the bedroom floor and, to a lesser extent, on the kitchen floor. He collected two samples from the upstairs unit and sent them to a laboratory for testing. They tested positive for gasoline. Hernandez spoke to defendant about a week after the fire. They got into an argument, during which defendant said, "I burnt your shit down." Hernandez admitted that she did not know if defendant was serious and added that "then he like took it back, you know." Sipes also spoke to defendant. On the morning of the fire, defendant said that the fire started after he fell asleep with a lit cigarette in his hand, yet remarked that "it sounded like a bomb going off." Later, he said that he had used a bomb to start the fire. Later still, he said the fire had been started with gasoline.

Defendant testified that after he walked back home from the bar, he went to visit Fultz and discussed his problems with Hernandez. He admitted that Fultz walked him home but denied saying anything to him about starting a fire. Once home for the night, he began packing his things to move out. He got tired of going up and down the stairs, so he started dropping his belongings off the balcony. Coincidentally, the toilet malfunctioned and broke away from the floor, so defendant discarded that too. Sometime while

defendant was in the house, he noticed that there was a fire in the bedroom and ran out. Defendant denied setting the fire deliberately and claimed that it was caused by his "carelessness." Defendant admitted that he told Sipes that he had fallen asleep with a lit cigarette. He denied telling him anything different. However, he told Lehtola "that couldn't have happened" and suggested that the fire was caused by the electrical system or the furnace. He told Puddy that he was not at home when the fire started.

*People v. Beelby*, No. 276998, at *1-2 (Mich. Ct. App. Aug. 26, 2008).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel filed a brief which raised the following claim:

Mr. Beelby was denied his Sixth and Fourteenth Amendment rights to a fair trial and due process of law through improper argument of the prosecutor. Further, trial counsel's failure to object deprived Mr. Beelby of his Sixth Amendment right to the effective assistance of counsel.

Petitioner also filed a pro se supplemental brief, raising the following three issues:

I. Defendant was denied the due process of law when the most critical exculpatory evidence was destroyed before defendant was charged with the crime of arson-dwelling house.

II. Defendant was denied his constitutional guarantee of the Sixth and Fourteenth Amendments to effective assistance of trial counsel through counsel's failure to consult and/or retain an expert witness.

III. Defendant was denied his Sixth and Fourteenth Amendment right's [sic] to a fair and impartial trial and due process of law through the prosecutor allowing false testimony to stand uncorrected and then "testifying" to its truthfulness.

After the Michigan Court of Appeals affirmed defendant's conviction in an unpublished opinion, Petitioner filed an application for leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed by" it. *People v. Beelby*, 765 N.W.2d 305 (Mich. 2009) (table).

-4-

Petitioner returned to the trial court and filed a motion for relief from judgment, raising the following claims:

I. Defendant is entitled to be relieved from the judgment of arson against him for want of jurisdiction because the house which he was accused of setting fire, by virtue of the uninhabitable condition of the lower quarters, despite the fact he was renting the upper quarters, was not a dwelling house for purposes of the arson statute.

II. Defendant is entitled to relief from the judgment of arson of a dwelling house, as a result of a jurisdictional defect, where, because the house had been uninhabitable at the time of the fire, then the house was not a "dwelling house," and, thus, the prosecution brought the charge under the wrong statute.

III. Defendant is entitled to be relieved from the judgment of arson against him where pre-arrest delay caused him to lose an opportunity to preserve any potential exculpatory evidence from the burned house, and where the only concrete evidence that exists now lies in flawed governmental reports, both which combines to meaningfully impaired his ability to defend against the charge and establishes prosecutorial recklessness in violation of his state and federal constitutional rights to due process.

IV. Defendant is entitled to relief from the judgment of arson against him where the prosecutor, in violation of the court's discovery order, and of *Brady*, completely suppressed the photos taken by the fire investigator of the burned house, and those photos could have potentially been used to exonerate him of the charge.

V. Defendant is entitled to relief from the judgment of arson against him where his trial counsel deprived him of his federal and state constitutional rights to the effective assistance of counsel, by failing to adequately investigate the case.

VI. Defendant is entitled to relief from judgment on account his having been deprived of his state and federal rights to due process and confrontation where the trial court refused to permit his trial counsel to make known to the jury the prosecution witness, Joe Fultz's, dishonesty in committing the crime of failing to register as a sex offender.

VII. Defendant is entitled to relief from the judgment of arson against where there was insufficient evidence to establish the crime of arson.

VIII. Defendant was denied the effective assistance of appellate counsel on

direct appeal for counsel's failure to raise the issues contained in his motion for relief from judgment, after he had urged counsel to raise those claims on direct appeal.

IX. Defendant demonstrated both good cause and actual prejudice stemming from the irregularities that support his claims for relief in this post-appeal proceeding.

The trial court denied the motion for relief from judgment. The trial court fount that Petitioner had failed to demonstrate "good cause" for failing to raise the issues on direct appeal, as required by Mich. Ct. R. 6.508(D)(3), and that to the extent some of the claims had been raised during direct appeal, review was barred under Rule 6.508(D)(2). *People v. Beelby*, No. 06-206275, Opinion and Order (Oakland Cir. Ct. Sept. 22, 2010).

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under Mich. Ct. R. 6.508(D). *People v. Beelby*, No. 304014 (Mich. Ct. App. Oct. 4, 2011). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under Mich. Ct. R. 6.508(D). *People v. Beelby*, 817 N.W.2d 80 (Mich. 2012) (table).

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

-6-

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or

theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

**A. Prosecutorial Misconduct**

Petitioner's first claim asserts that his trial was rendered fundamentally unfair by the prosecutor's misconduct. Specifically, he claims that the prosecutor (1) unfairly characterized the incident when he poured beer on Hernandez the night of the fire, (2) told

the jury that the expert witnesses were credible and had no reason to lie, and (3) suggested that Petitioner evaded police because he knew he was guilty.

The United States Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181(1986) (citing *Donnelly*); *Parker v. Matthews*,    U.S.    , 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012) (confirming that *Donnelly/Darden* is the proper standard).

Petitioner first argues that the prosecutor unfairly discussed the encounter on the night of the fire when he poured the beer on Hernandez at the bar. The Court has reviewed the closing argument where this comment was made. The prosecutor sought to demonstrate that Petitioner's anger towards Hernandez and his short temper created his motive for setting the fire. There was testimony presented that the night before the fire, Petitioner poured Hernandez's beer on her during a disagreement. Hernandez responded, in part, by allowing another man to buy her a beer. Eventually, Hernandez left with this other man and never returned to her home. Petitioner waited up all night for Hernandez to arrive home. Obviously, the incident with the beer was relevant to the prosecutor's theory of motive, and it was not presented during his closing argument in an unfair manner. There was no misconduct.

Petitioner next asserts that the prosecutor unfairly argued that its expert witnesses were credible and had no reason to lie. A prosecutor may not express a personal opinion

concerning the credibility of trial witnesses because such vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted); *See also Griffin v. Berghuis,* 298 F. Supp. 2d 663, 674-75 (E.D. Mich. 2004). It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d at 537 and n. 43. Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F. 3d 422, 433 (6th Cir. 2002).

Here, the prosecutor repeatedly stated that the arson experts were "very experienced," were the best experts regarding arson in the state, and had no reason to lie. Numerous cases have held that a prosecutor does not engage in vouching by arguing that his witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v.*

-10-

*Jackson,* 473 F. 3d 660, 672 (6th Cir. 2007); *U.S. v. Israel,* 133 Fed. Appx. 159, 165 (6th Cir. 2005); *U.S. v. Parker,* 49 Fed. Appx. 558, 563 (6th Cir. 2002); *See also Alder v. Burt,* 240 F. Supp. 2d 651, 669 (E.D. Mich. 2003)(prosecutor did not engage in improper vouching when he argued that there was no evidence that prosecution witness had "axe to grind" or any other improper motive, when he asked rhetorically whether person who would burn 19-year-old female's body to destroy evidence would give truthful testimony, or when he asked whether prosecution witnesses had any reason to lie). The complained of statements in this case were made during the portion of the prosecutor's argument that went over the details of the expert witnesses' testimony. While there was certainly no evidence presented that they were the "best experts in the state," the portions of the argument that approached the line of what is appropriate were not so flagrant or pervasive so as to render Petitioner entire trial fundamentally unfair.

Petitioner also asserts that the prosecutor unfairly suggested that he was evasive with the police because he was conscious of his guilt. Evidence was presented at trial that after the firefighters and police arrived at the scene, Petitioner emerged from his grandfather's house across the street. Petitioner took off his shoes and socks and began acting strange. When he was placed in a patrol car, he started kicking the windows with his bare feet. This evidence allowed the prosecutor to argue that Petitioner behavior at the scene showed his consciousness of guilt. While other inferences from his behavior could also be drawn, the one drawn by the prosecutor was not unfair and did not render Petitioner's trial unfair.

Accordingly, Petitioner's claims of prosecutorial misconduct are without merit and do not provide a basis for granting habeas relief.

-11-

**B. Destruction of Evidence**

Petitioner's second claim asserts that he was denied a fair trial when the remains of the structure were torn down after the fire, preventing any further investigation regarding the cause and origin of the fire.

The Due Process Clause requires that the State disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "Separate tests are applied to determine whether the government's failure to preserve evidence rises to the level of a due process violation in cases where material exculpatory evidence is not accessible, see *Trombetta*, 467 U.S. at 489, versus cases where 'potentially useful' evidence is not accessible. See *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)." *United States v. Wright*, 260 F.3d 568, 570-71 (6th Cir. 2001). A defendant's due process rights are violated where material exculpatory evidence is not preserved. *Trombetta*, 467 U.S. at 489. For evidence to meet the standard of constitutional materiality, it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 488-89. The destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith. See *id.* at 488; *Youngblood*, 488 U.S. at 57.

A different result ensues when "no more could be said" of the unpreserved evidence "than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 56. Absent a showing of bad faith, the failure to preserve potentially useful evidence is not a due process violation. *Id.* at 58. A habeas

petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. See *Malcum v. Burt*, 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003). In short, to prevail on a destruction-of-evidence claim, a criminal defedant needs to show that the evidence was exculpatory or that the police acted in bad faith. *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004).

Here, Petitioner's claim does not concern the destruction of evidence that had apparent exculpatory value. Rather, it deals with the preservation of evidence that "could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 56.  Petitioner is therefore required to show bad faith on behalf of the state. There is no indication at all that the house was demolished after the fire in an effort to destroy evidence.  Samples taken from the structure relevant to the cause an origin analysis were retained after the prosecutor's experts tested them. Presumably they could have been tested again if Petitioner had retained an independent expert witness. This claim is without merit.

## C. Ineffective Assistance of Counsel

Petitioner's third claim asserts that his trial counsel was ineffective for failing to retain an independent expert witness to testify regarding the cause and origin of the fire and to assist counsel in his cross-examination of the prosecutor's experts.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466

-13-

U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state-appellate courts reviewing their performance. "The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal and end citations omitted). "When [section]

-14-

2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id.*

Here, the Michigan Court of Appeals rejected Petitioner's claim as follows:

> The decision whether to call an expert witness is a matter of trial strategy. *Ackerman*, supra at 455; *People v. Cooper*, 236 Mich.App. 643, 658 (1999), lv den 461 Mich. 997, 610 N.W.2d 924 (2000). Decisions regarding how to cross-examine and impeach witnesses are also matters of trial strategy. *In re Ayres*, 239 Mich.App. 8, 23 (1999); *People v. McFadden*, 159 Mich. App. 796, 800 (1987), lv den 429 Mich. 853 (1987). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v. Rockey*, 237 Mich. App. 74, 76-77 (1999). "Ineffective assistance of counsel may be established by the failure to call witnesses only if the failure deprives defendant of a substantial defense." *People v. Julian*, 171 Mich. App. 153, 159 (1988). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v. Kelly*, 186 Mich. App. 524, 526 (1990).
>
> There is nothing in the record to suggest, and defendant has not offered any evidence to show, that another cause and origin expert would have determined that the fire was accidental. Further, the fact remains that gasoline was detected in samples taken from the house. Therefore, even if counsel had been able to get the prosecutor's experts to agree that there was a basis for disputing certain theories regarding the behavior of fire and the interpretation of the charred remains, or had he located an expert who could refute some of the testimony offered by the prosecutor's experts on those points, defendant has failed to establish a reasonable probability that but for counsel's failure to retain such an expert, the outcome of the trial would have been different. *Ackerman*, supra at 455-456, 669 N.W.2d 818.

*Beelby*, No. 304014, at *5.

This decision was not unreasonable in light of the established Supreme Court standard that directs a reviewing court to presume that counsel is effective. For all the record shows, Petitioner's attorney may have reasonably decided that his most effective defense in light of the weighty evidence of Petitioner's guilty was to focus on Petitioner's

state of mind rather than creating a "battle of expert witnesses." *Nields v. Bradshaw*, 482 F.3d 442, 456 (6th Cir. 2007)(decision to limit questioning of expert witness may have been a strategic one); *Bower v. Quarterman*, 497 F.3d 459, 467 (5th Cir. 2007)("An early formulation of trial strategy and a decision to attack the state's expert witnesses on cross examination rather than calling additional experts can be a part of a reasonable trial strategy."); *Sallahdin v. Mullin*, 380 F.3d 1242, 1250-51 (10th Cir. 2004)(upholding as constitutional counsel's decision not to call an expert witness, despite counsel's failure to identify a strategic basis for that decision, when "the record on appeal supplies at least three reasons why it would have been constitutionally reasonable for counsel not to introduce this evidence").  Petitioner has not proffered any evidence at all that an expert would have given testimony that was favorable to the defense. There simply was nothing unreasonable about how that state court decided this issue. Petitioner has therefore failed to demonstrate entitlement to habeas relief.

**D. False Testimony**

Petitioner next asserts that the prosecutor presented false testimony about the cause of the fire. He asserts that the prosecutor's expert witnesses lied under oath about their observations and opinions.

Perjury is "false testimony [under oath or affirmation] concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). Prosecutors, as representatives of the state, may not deceive a court and jurors by eliciting false evidence or by allowing false testimony to go uncorrected when it appears. *Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). "[A]

conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted). The United States Court of Appeals for the Sixth Circuit has fashioned a three-part test for determining whether there was a denial of due process through the use of false testimony. The defendants must show: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendants to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony. *Brooks v. Tennessee*, 626 F.3d 878, 894-95 (6th Cir. 2010).

In this case, Petitioner has proffered no evidence whatsoever to show that the expert witnesses gave false testimony or that the prosecutor knew it was false. The testimony was supported by the other overwhelming evidence of Petitioner's guilt. He admitted to a friend that he was going to burn the residence, he threw items out of the house immediately before the fire, he told neighbors that the house was on fire and to evacuate, and he was motivated to set the fire after his fight with Hernandez. This claim is without merit.

**E. Evidentiary Hearing**

Petitioner seeks an evidentiary hearing to establish facts to support his claims regarding ineffective assistance of counsel and the presentation of false evidence.

In *Cullen v. Pinholster*, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011), the Supreme Court held that where habeas claims had been decided on their merits in state court, as was the case with Petitioner's claims at issue, a federal court's review under 28 U.S.C. section 2254(d)(1)—whether the state court determination was contrary to or an

-17-

unreasonable application of established federal law—must be confined to the record that was before the state court. 131 S. Ct. at 1398. The *Pinholster* Court specifically found that the District Court should not have held an evidentiary hearing regarding Pinholster's claims until after the Court determined that the petition survived review under Section 2254(d)(1). *Id.*, at 1398. Here, the Court has determined that Petitioner's claims do not survive review under Section 2254(d)(1) because they were reasonably adjudicated by the state courts. Therefore, Petitioner is barred from obtaining a hearing in this Court.

**F. Claims Raised on Collateral Review**

Petitioner's remaining claims were all presented to the state courts in his motion for relief from judgment and the appeal that followed its denial. Respondent asserts that review of these claims is barred because the state court decision rests on an independent and adequate state procedural ground.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a

defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." Mich. Ct. R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id*.

-19-

In the present case, the Oakland Circuit Court judge rejected Petitioner's motion for relief from judgment, finding that he had failed to demonstrate good cause for his failure to raise the issues in his prior appeal. Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3), Petitioner's post-conviction claims are clearly procedurally defaulted. *See Ivory v. Jackson*, 509 F. 3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Petitioner's remaining claims are therefore procedurally defaulted.

With respect to these claims, Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 463 U.S. at 754.

"[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

Notwithstanding *Barnes*, it is still possible to bring a Strickland claim based

-20-

on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent.

*Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (*quoting Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Petitioner's appellate counsel filed a substantial appeal brief which raised claims Petitioner still maintains entitle him to relief. Petitioner has not shown that appellate counsel's strategy in presenting some claims and not raising other claims was deficient or unreasonable. Petitioner has therefore failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano*, 228 F.3d 674, 682-83 (6th Cir. 2000).

Because Petitioner has failed to show cause to excuse his default, it is unnecessary

to reach the prejudice issue regarding his post-conviction claims. *Smith*, 477 U.S. at 533; *See also Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has not presented any new reliable evidence that he is innocent of the crimes, as such, a miscarriage of justice will not occur if the Court declined to review petitioner's post-conviction claims on the merits.

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his claims would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee*, 486 F.3d 883, 891 (6th Cir. 2007). Petitioner has failed to show that his post-conviction claims have any merit for the reasons stated by Respondent in its answer. Petitioner is not entitled to habeas relief on his remaining claims. The Court denies the petition for writ of habeas corpus.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue.

-22-

See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

### V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.


S/Denise Page Hood
Denise Page Hood
United States District Judge

-23-

Dated:  March 31, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager